UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| THE ASSOCIATED PRESS, STATES NEWSROOM d/b/a Indiana Capital Chronicle, GANNETT CO., INC., CIRCLE CITY BROADCASTING I, LLC, and TEGNA INC., <br><br> *Plaintiffs*, <br><br> v. <br><br> RON NEAL, *in his official capacity as the Superintendent of Indiana State Prison*, and LLOYD ARNOLD, *in his official capacity as the Commissioner of the Indiana Department of Correction*, <br><br> *Defendants*. | Civil Case No. 1:25-cv-872 <br><br> **DECLARATION OF JENNIE RUNEVITCH IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

I, Jennie Runevitch, state as follows:

1. I am currently the weekend anchor at WTHR-TV, where I have been an anchor and reporter for nearly two decades. I currently cover a broad range of stories from human interest to politics to criminal justice. Before WTHR, I was a reporter at WNDU in South Bend, Indiana, WTWO in Terra Haute, Indiana, and WHIZ in Zanesville, Ohio.

2. I have a degree in broadcast journalism from Kent State University. Although I am Cleveland native, I have lived in Indiana for the majority of my career and consider myself a Hoosier.

3. In 2001, I covered the lead up to Timothy McVeigh's execution, but I did not witness the execution.

4. During my time at WNDU, I covered Indiana's execution of Alan Matheney by lethal injection at Indiana State Prison in Michigan City, Indiana, on September 28, 2005.

1

5. Shortly after I wrote and aired a piece about Mr. Matheney's case in 2005, I received a handwritten letter from Mr. Matheney asking me if I would attend his upcoming execution as a witness. To the best of my knowledge, he selected me as one of his five allowed "friends and family" under Indiana Code § 35-38-6-6. I agreed to be a witness.

6. On September 27, 2005, I traveled to Indiana State Prison in Michigan City in order to attend Mr. Matheney's execution. I did not know what to expect and there was little to no communication from the Indiana Department of Correction ("IDOC") before or during the process.

7. When I arrived at Indiana State Prison on the evening of September 27, 2005, the other journalists covering the story were stationed outside in the parking lot. Along with several other witnesses and one other journalist who was on Mr. Matheney's friends and family list, I was escorted inside to a waiting room. After some time, we were moved to a different, smaller room.

8. As we moved from the first room to the second, I have a strong memory of a baking smell coming from what I assume was the prison kitchen, possibly chocolate chip cookies. For quite some time, I could not tolerate the smell of chocolate chip cookies because I associated it with this very intense experience.

9. With no information or instruction from IDOC, I was led into this second room, which as relatively small and held a few chairs. There was a window at the at the end of the room with closed blinds.

10. All of a sudden, in a kind of nightmarish fashion, the blinds opened and for a few minutes, I could see Mr. Matheney lying on a gurney. He was a big man, and I was struck by his

appearance and the movement of his large stomach as he breathed. Someone was in the room with him, who I believe administered the injection to Mr. Matheney.

11. For the most part, the whole process was very quiet. To the best of my knowledge, there was some kind of speaker system that allowed those in the witness room to listen to what was happening in the room behind the glass where Mr. Matheney was being executed. Mr. Matheney never spoke, but I recall hearing his attorney read his final statement. I could also hear Mr. Matheney's breathing change and become labored.

12. After several minutes, it appeared by his lack of movement that Mr. Matheney's stopped breathing, but no one announced that he had died. The blinds were closed again. As quickly and silently as we were ushered in, we were ushered out again and I left the premises. To the best of my knowledge, Mr. Matheney died sometime after 12:00 AM on September 28, 2005.

13. An execution is the last step of the judicial experience. When there is no access or limited access to that proceeding, we, as a community, are taking someone's life without documentation and without transparency.

14. To shroud executions in secrecy is to force the public to make a life or death decision for another person without seeing how that process actually plays out.

15. When I covered the execution of Mr. McVeigh, I knew there would be a team of journalists working and collaborating on the story, and the events and procedures were articulated beforehand. This was in sharp contrast to Mr. Maheney's execution in Indiana, in which I was one of very few people bearing the tremendous responsibility of witnessing the end of his life on behalf of the public.

16.	The fact that I did not have access to cover any previous executions meant that in addition to having no colleagues with whom to collaborate, I did not have any basis to know what would occur, what was normal versus abnormal, etc.

17.	WTHR covered the State's execution of Joseph Corcoran in December 2024, and WTHR will cover the planned execution of Benjamin Ritchie in May 2025.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

DATED: May __11__, 2025

Jennie Runevitch