# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| THE ASSOCIATED PRESS, STATES NEWSROOM d/b/a The Indiana Capital Chronicle, GANNETT CO., INC., CIRCLE CITY BROADCASTING I, LLC, and TEGNA INC., <br><br> *Plaintiffs*, <br><br> v. <br><br> RON NEAL, *in his official capacity as the Superintendent of Indiana State Prison*, and LLOYD ARNOLD, *in his official capacity as the Commissioner of the Indiana Department of Corrections*, <br><br> *Defendants*. | Case No. 1:25-cv-872-MPB-MJD |

## NOTICE OF APPEAL

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. § 1292(a)(1) and Federal Rule of

Appellate Procedure 3, all plaintiffs in the above-captioned case hereby appeal to the United

States Court of Appeals for the Seventh Circuit from the District Court's Order denying

Plaintiffs' Motion for Preliminary Injunction, ECF 36.

Dated June 13, 2025

*/s/ Kristopher L. Cundiff*
Kristopher L. Cundiff
REPORTERS COMMITTEE FOR
 FREEDOM OF THE PRESS
PO Box 150
Fishers, IN 46038
Tel: (463) 271-4676
Fax: (202) 795-9310
kcundiff@rcfp.org

Lin Weeks*
Elizabeth J. Soja*

REPORTERS COMMITTEE FOR
 FREEDOM OF THE PRESS
1156 15th Street NW, Suite 1020
Washington, D.C. 20005
Tel: (202) 795-9300
Fax: (202) 795-9310
lweeks@rcfp.org
esoja@rcfp.org
*admitted pro hac vice*

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| THE ASSOCIATED PRESS, STATES NEWSROOM d/b/a The Indiana Capital Chronicle, GANNETT CO., INC., CIRCLE CITY BROADCASTING I, LLC, and TEGNA INC., | |
| *Plaintiffs*, | |
| v. | Case No. 1:25-cv-872-MPB-MJD |
| RON NEAL, *in his official capacity as the Superintendent of Indiana State Prison*, and LLOYD ARNOLD, *in his official capacity as the Commissioner of the Indiana Department of Corrections*, | |
| *Defendants*. | |

## PLAINTIFFS-APPELLANTS' DOCKETING STATEMENT

Pursuant to Seventh Circuit Rule 3(c), Plaintiffs The Associated Press, States Newsroom d/b/a The Indiana Capital Chronicle, Gannett Co., Inc., Circle City Broadcasting I, LLC, and TEGNA INC. respectfully submit this docketing statement.

### Plaintiffs-Appellants' Jurisdictional Statement

Plaintiffs-Appellants' complaint, which seeks declaratory and injunctive relief pursuant to 42 U.S.C. § 1983, alleges that Indiana Code § 35-38-6-6(a) and Indiana State Prison Facility Directive ISP 06-26: Execution of Death Sentence, Sec. C (June 17, 2024) ("ISP 06-26") violate the First Amendment to the United States Constitution.  The district court therefore had federal question jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1343.

Plaintiffs seek review of the district court's order denying a preliminary injunction entered on May 16, 2025. Plaintiffs do not claim that any subsequent motion has tolled the time within which to appeal. Plaintiffs' notice of appeal was filed June 13, 2025.

The Court of Appeals has jurisdiction over this appeal under 28 U.S.C. § 1292(a)(1) because this is an appeal from an order denying a preliminary injunction motion.

**Prior or Related Appellate Proceedings**

There are no prior or related appellate proceedings.

**Current Occupants of Offices Appearing in their Official Capacities**

The current Superintendent of Indiana State Prison is Ron Neal. The current Commissioner of the Indiana Department of Correction is Lloyd Arnold.

Dated June 13, 2025

/s/ Lin Weeks
Lin Weeks
REPORTERS COMMITTEE FOR
 FREEDOM OF THE PRESS
1156 15th Street NW, Suite 1020
Washington, D.C. 20005
Tel: (202) 795-9300
Fax: (202) 795-9310
lweeks@rcfp.org

/s/ Kristopher L. Cundiff
Kristopher L. Cundiff
REPORTERS COMMITTEE FOR
 FREEDOM OF THE PRESS
PO Box 150
Fishers, IN 46038
Tel: (463) 271-4676
Fax: (202) 795-9310
kcundiff@rcfp.org

*Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| THE ASSOCIATED PRESS,<br>STATES NEWSROOM d/b/a INDIANA<br>CAPITAL CHRONICLE,<br>GANNETT CO., INC.,<br>CIRCLE CITY BROADCASTING I, LLC,<br>TEGNA INC.,<br><br>Plaintiffs,<br><br>v.<br><br>RON NEAL in his official capacity as the<br>Superintendent of Indiana State Prison,<br>LLOYD ARNOLD in his official capacity as the<br>Commissioner of the Indiana Department of<br>Correction,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   No. 1:25-cv-00872-MPB-MJD<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Plaintiffs The Associated Press, States Newsroom d/b/a Indiana Capital Chronicle, Gannett Co., Inc., Circle City Broadcasting I, LLC, and Tegna Inc. (collectively, "Plaintiffs") are media outlets that report on aspects of Indiana's law enforcement, criminal justice system, and correctional institutions, including execution proceedings. On May 5, 2025, Plaintiffs sued Defendants Ron Neal and Lloyd Arnold (collectively, "Defendants"), bringing a First Amendment challenge to the constitutionality of a provision under Indiana law—as applied to them—that prohibits Plaintiffs from observing a forthcoming execution in Indiana. (Docket No. 1). At issue is Plaintiffs' Motion for Preliminary Injunction (Docket No. 19). For the reasons that follow, Plaintiff's Motion (Docket No. 19) is **DENIED**.

## I.     Background

Plaintiffs are a collection of newspapers and digital news media networks. (Docket No. 9 at ECF pp. 2–3). They publish newspapers such as the Associated Press, the Capital Chronicle, and the Indianapolis Star, and broadcast on networks including WISH-TV and WTHR-13. (*Id.*). While Plaintiffs seek an injunction that would allow them to attend and observe all executions carried out by the state of Indiana for the duration of this case, the only execution presently scheduled is that of Benjamin Ritchie. (*Id.* at ECF p. 12). Plaintiffs have reported on Ritchie's legal process, including his pending execution and requests for judicial intervention. (*Id.* at ECF pp. 4–5). Plaintiffs intend to send a reporter to witness and report on the execution of Ritchie but claim that their "proposed course of conduct" is prohibited by Indiana Code § 35-38-6-6(a) and Defendants' corresponding implementing policy ("ISP 06-26"). (*Id.* at ECF pp. 7, 12). The Indiana Supreme Court scheduled Richie's execution for May 20, 2025. (*Id.* at ECF p. 12). The execution will take place at the Indiana State Prison in Michigan City, Indiana. (*Id.* at ECF p. 10).

Defendant Ron Neal is the Superintendent of Indiana State Prison. (*Id.* at ECF p. 3). Defendant Lloyd Arnold serves as the Commissioner of the Indiana Department of Corrections ("IDOC"). (*Id.*). Plaintiffs allege that Defendant Arnold "is authorized to adopt rules and regulations governing execution protocols," and that Defendant Neal is tasked with "administer[ing]" Indiana Code and the regulations set forth by the IDOC. (*Id.* at ECF pp. 3–4).

Plaintiffs contend that Indiana is one of only two states that do not allow for media members to witness an execution. (*Id.* at ECF p. 6). Indiana law specifies which people may be present at an execution. That list is limited to:

(1) The warden of the state prison.

2

(2) The person designated by the warden of the state prison and any assistants who are necessary to assist in the execution.

(3) The prison physician.

(4) One (1) other physician.

(5) The spiritual advisor of the convicted person.

(6) The prison chaplain.

(7) Not more than five (5) friends or relatives of the convicted person who are invited by the convicted person to attend.

(8) Except as provided in subsection (b), not more than eight (8) of the following members of the victim's immediate family who are at least eighteen (18) years of age:

    (A) The victim's spouse.

    (B) One (1) or more of the victim's children.

    (C) One (1) or more of the victim's parents.

    (D) One (1) or more of the victim's grandparents.

    (E) One (1) or more of the victim's siblings.

Ind. Code § 35-38-6-6(a). Media members may gain access to the proceeding by qualifying under one of those listed categories. Practically, that limits members of the media to being one of the five friends or relatives designated by the convicted person. Such was the case when Casey Smith, a journalist for the Capital Chronicle, was chosen by Joseph Corcoran to be present at his execution in 2024. (Docket No. 9 at ECF p. 10). According to Defendant Neal, Benjamin Ritchie has not invited any of Plaintiffs' reporters to attend his execution. (Docket No. 34-1 at ECF p. 5).

The IDOC devised and implemented regulations to carry out executions in accordance with Indiana Code. (Docket No. 9-1 at ECF p. 2). Relevant here, ISP 06-26 contains rules concerning news media. (*Id.* at ECF p. 4). The regulation states that a staff member shall "assist the State Prison in the coordination of media communications." (*Id.*). Representatives of media companies are granted access to a "designated area" and must remain in that area during the execution. (*Id.*). Moreover, "[m]edia personnel shall not be permitted to witness the execution or

to be in the Execution Chamber. The only exception to this rule is if the offender requests . . . that a member or members of the media be present" as one of their five chosen witnesses. (*Id.*). During the 2024 execution of Corcoran, Indiana State Prison officials did not let Plaintiffs and other members of the media, other than Ms. Smith, inside the prison. (Docket No. 9 at ECF p. 10). Instead, they covered the execution from a parking lot outside the Indiana State Prison facility. (*Id.*).

Plaintiffs filed their Complaint on May 5, 2025. (Docket No. 1). They filed a Motion for Preliminary Injunction (Docket No. 9) on May 12, 2025. The parties appeared for an emergency hearing on May 16, 2025. Plaintiffs were represented by attorneys Lin Weeks, Elizabeth Soja, and Kristopher Cundiff. Defendants were represented by attorneys Jefferson Garn, Brandyn Arnold, and Thomas Pratt. Plaintiffs seek a preliminary injunction allowing up to four members of the press to attend the execution of Benjamin Ritchie on May 20, as well as other executions carried out by IDOC that are scheduled before this case is decided on the merits.[1]

## II.    Legal Standard

"A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need." *Turnell v. Centimark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). Plaintiffs, as the moving parties, must establish that they are "likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Ill.*

---

[1] During the Preliminary Injunction hearing, the Court asked Plaintiffs to clarify the exact relief they are seeking. While they did provide some additional clarity, the Court retains serious questions as to the shape and scope of the injunctive relief requested. (*See* Preliminary Injunction Hearing Transcript at ECF pp. 59–61). Would these media members take the place of the victim's family? Or are they added in addition to those permitted by Indiana statute? And what exactly would they be permitted to see? The ambiguity as to Plaintiffs' requested relief hamstrings this Court, particularly in light of the tight timeframe in which it has to rule on Plaintiffs' Motion. Nonetheless, the Court decides their Motion under the traditional preliminary injunction framework.

*Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020). In First Amendment cases, such as this one, "the likelihood of success on the merits will often be the determinative factor." *Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 590 (7th Cir. 2012).

## III.    Discussion

Plaintiffs bring two as applied challenges under the First Amendment. First, they argue that they have a qualified First Amendment right to view executions under *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) and its progeny. Second, Plaintiffs argue that Indiana Code § 35-38-6-6(a) and ISP 06-26 violate the Press Clause of the First Amendment because members of the media are treated differently than members of the public. The Court begins and ends its analysis with the likelihood of success on the merits. That analysis is determinative of both claims.[2]

### A.   Right of Access to Execution Proceedings

#### 1.   *The* Press–Enterprise II *Framework Does Not Apply*

As a foundational principle, the First Amendment's protection of the press has "traditionally focused on the right of the press to publish information without government restraint . . . rather than on the acquisition of the information in the first place." *Zemel v. Rusk*, 381 U.S. 1, 16–17 (1965). While the process of gathering news is afforded certain First Amendment protections, *Branzburg v. Hayes*, 408 U.S. 665, 684 (1972), the First Amendment "as a general proposition, does not afford the press a special right of access not available to the public generally." *Oklahoma Observer v. Patton*, 73 F.Supp.3d 1318, 1323 (W.D. Okla. 2014)

---

[2] Defendants argue that the timing of Plaintiffs' Motion for Preliminary Injunction, just days before an execution is scheduled, merits a denial of Plaintiffs' request on the equities. They cite *Ramirez v. Collier*, 595 U.S. 411, 434 (2020), for the proposition that "a party's inequitable conduct can make equitable relief inappropriate," particularly where there are "last-minute claims arising from long-known facts." While Plaintiffs' choice of timing is perplexing here, the Court reaches its conclusion by looking to the likelihood of success on the merits alone.

(citing *Houchins v. KQED, Inc.*, 438 U.S. 1, 15–16 (1978) (plurality opinion)). *See also Pell v. Procunier*, 417 U.S. 817, 834 (1974) ("[N]ewsmen have no constitutional right of access to prisons or their inmates beyond that afforded the general public.").

But the Supreme Court has recognized circumstances where the press has a right to access certain proceedings. That process started in *Richmond Newspapers*, where the Court held that the First Amendment implicitly guarantees the press a right of access to criminal trials. 448 U.S. at 574. The Court arrived at that conclusion by observing the "unbroken, uncontradicted history" of public access to criminal trials, such that a "presumption of openness inhere[s] in the very nature of a criminal trial under our system of justice." *Id.* Thus, it found that the right of the public and press to attend criminal trials is guaranteed under the First Amendment. *Id.* The Court expanded that right of access to other aspects of the criminal adjudication process in subsequent cases. *See, e.g., Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606 (1982) (testimony of a child victim); *Press–Enter. Co. v. Superior Court*, 464 U.S. 501, 510–11 (1984) (*Press–Enterprise I*) (voir dire examinations); *Press–Enter. Co. v. Superior Court*, 478 U.S. 1, 8–9, (1986) ("*Press–Enterprise II*") (preliminary hearings).

In *Press–Enterprise II*, the Supreme Court laid down "two complimentary considerations" to help courts determine whether a "right of access" attaches to a "criminal proceeding." 478 U.S. at 8. First "whether the place and process have historically been open to the press and general public." *Id.* This is commonly referred to as the "experience" consideration. *Id.* at 9. Second, "whether public access plays a significant positive role in the functioning of the particular process in question." *Id.* at 8. This is the "logic" consideration. *Id.* at 9. "If the particular proceeding in question passes these tests of experience and logic, a qualified First

Amendment right of public access attaches." *Id.* Here, Plaintiffs argue that executions are the sort of proceeding to which this framework should apply, and that if it applies, both tests are satisfied.

The Seventh Circuit has applied the twin considerations recognized in *Press–Enterprise II* to contexts beyond criminal proceedings. Indeed, it has characterized that case as supplying "the framework for analyzing restrictions on the press's right of access to *court proceedings* and documents." *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1070 (7th Cir. 2018) (emphases added). As such, the Seventh Circuit has held that there is a right of access to sentencing hearings, *United States v. Eppinger*, 49 F.3d 1244 (7th Cir. 1995), plea hearings, *United States v. Danovaro*, 877 F.2d 583 (7th Cir. 1989), and civil proceedings, *In re Continental Ill. Sec. Litig.*, 732 F.2d 1302 (7th Cir. 1984). But the Seventh Circuit has never extended the *Press–Enterprise II* framework to an event beyond a judicial proceeding, let alone something after the imposition of a judgment in a case, such as an execution.[3] Thus, there is no binding authority on this Court that applies this framework to an execution.

To bridge the gap in precedent, Plaintiffs ask this Court to rely on *California First Amendment Coalition v. Woodford*, 299 F.3d 868 (9th Cir. 2002), for the proposition that courts "have held that the qualified constitutional right of access attaches to execution proceedings." (Docket No. 20 at ECF p. 9). There, the Ninth Circuit held that "the public enjoys a First Amendment right to view executions from the moment the condemned is escorted into the execution chamber" after finding that executions passed the experience and logic test under *Press–Enterprise II*. 299 F.3d at 877. Of course, out-of-circuit precedent is not binding on this

---

[3] Plaintiffs point to *Wisc. Interscholastic Athletic Ass'n v. Gannett Co., Inc.*, where the Seventh Circuit noted that in certain cases "the public and media often have the right—either by statute or even the Constitution—to attend a public proceeding like an execution or trial." 658 F.3d 614, 627 (7th Cir. 2011). But that case dealt with the media's ability to stream video of middle school and high school athletic events. *Id.* at 615–16. At most, the Seventh Circuit's reference to attendance at executions is dicta about a categorically different scenario that is readily distinguishable from this case.

Court, though it is entitled to "respectful consideration." *OSF Healthcare Sys. v. Insperity Grp. Health Plan*, 82 F.Supp.3d 860, 865 (C.D. Ill. 2015) (citation and quotations omitted).

In the years following *Woodford*, other district courts have declined to adopt its reasoning.[4] For example, in *Oklahoma Observer*, the court noted its "considerable doubt" that the *Press–Enterprise II* framework "even potentially applies" to an execution. 73 F.Supp.3d at 1324. The court opined that the Supreme Court's rulings in both *Press–Enterprise* cases, as well as *Richmond Newspapers*, suggested that the Supreme Court views the *Press–Enterprise II* framework "as applying to the criminal *adjudication* process rather than to the process of *implementing* a court's judgment, such as is involved" in an execution. *Id.* (emphases in original). The district court noted its skepticism was "consistent with the [Supreme] Court's different treatment of access issues in the prison context, where the implementation of criminal sentences normally occurs." *Id.*

To support that proposition, the court cited to *Houchins*, where the Supreme Court held that "the media have no special right of access" to a prison in the wake of a prisoner's suicide, "different from or greater than that accorded the public generally." 438 U.S. at 16; *see also Pell*, 417 U.S. at 834 ("The Constitution does not . . . require government to accord the press special access to information not shared by members of the public generally."). Thus, the district court concluded that the *Press–Enterprise II* framework "does not extend" to executions as they are "outside the criminal adjudication process." *Oklahoma Observer*, 73 F.Supp.3d at 1325. That

---

[4] The Court also notes that a district court in Pennsylvania granted a preliminary injunction based on the qualified right to public access in an execution case. *Philadelphia Inquirer v. Wetzel*, 906 F.Supp.2d 362, 370 (M.D. Pa. 2012). That case, however, is distinguishable because executions in Pennsylvania do not occur inside penal institutions. *Id.* at 369. Moreover, the Third Circuit had applied the *Richmond Newspapers* line of cases to "administrative proceedings, including executive directives," something the Seventh Circuit has not done. *Id.* at 370.

court ultimately denied the plaintiff's motion for a preliminary injunction based on the qualified right of access theory. *Id.* at 1331.

A district court from Virginia expressed similar doubts about the persuasive value of *Woodford*. In granting a motion to dismiss plaintiff's qualified right of access claim, the court noted that it would be "quite a reach" to look at Supreme Court precedent and apply it to executions "which do not occur in the adjudicatory process." *BH Media Group, Inc. v. Clarke*, 466 F.Supp.3d 653, 662 (E.D. Va. 2020), *vacated and remanded*, 851 F.App'x 386 (4th Cir. 2021) (rendering the case moot after Virginia abolished the death penalty). Stepping out on that limb, in the eyes of the district court, was a decision better left for the Supreme Court, and so the court "decline[d] the invitation to follow *Woodford*[.]" *Id.* This Court will not take that step either, absent authority from the Supreme Court or the Seventh Circuit.

Plaintiffs argue that executions are criminal proceedings that are "initiated under judicial authority" and that carry "hallmarks of other administrative proceedings" codified within the Indiana State Prison's rules and regulations. (Docket No. 20 at ECF p. 7). But that argument ignores the fact that, in Indiana, once a sentence is imposed and a judgment is entered "the custody of the defendant is with the Executive branch, represented by the Department of Corrections . . . not the Judicial branch." *Barnes v. State*, 435 N.E.2d 235, 242 (Ind. 1982). Thus, because an execution is not a "court proceeding[]" as contemplated by the Seventh Circuit. *Courthouse News Serv*, 908 F.3d at 1070, the *Press–Enterprise II* framework does not apply to this case.

### 2. *Even if* Press–Enterprise II *Applies, Plaintiffs Are Unsuccessful*

Even if *Press–Enterprise II* applies to executions as a threshold matter, executions do not pass the experience and logic test such that a qualified right of access exists.

First, the experience consideration instructs courts to ask "whether the place and process have historically been open to the press and general public." *Press–Enterprise II*, 478 U.S. at 8. While there has certainly been public access to executions throughout this Nation's history, the scope of that access is not on par with the historical access to other proceedings that have passed the experience test. To be sure, "executions were open to all comers" in the United States in the early 1800s. *See Woodford*, 299 F.3d at 875 (highlighting the history of executions and citing to academic articles). But in the 1830s, "executions in the United States became private events and moved from the public square to inside prison walls." *Arkansas Times, Inc. v. Norris*, No. 5:07-CV-195, 2008 WL 110853, at *4 (E.D. Ark. Jan. 7, 2008) (citing Michael Madow, *Forbidden Spectacle: Executions, the Public and the Press in Nineteenth Century New York*, 43 Buff. L.Rev. 461, 557 (1995)). As states started to move executions away from public settings, many chose to "implement[] procedures that ensured executions would remain open to some public scrutiny," often via laws that allowed for "respectable citizens" to be present. *Woodford*, 299 F.3d at 875. For its part, Indiana has conducted executions at the Indiana State Prison since 1897.[5] *See* Dawn Mitchell, *A History of Executions in Indiana*, IndyStar (Dec. 11, 2019), https://www.indystar.com/story/news/2019/12/11/indiana-executions-full-list-peopleexecuted-since-1897/4357164002/. And since at least 1983, Indiana has not provided for media members to be among the people eligible to witness an execution. *See* Ind. Code § 35-38-6-6 (1983).

Plaintiffs contend that "while the history of public access to execution proceedings in Indiana is mixed," the general history of public access to executions satisfies the experience test of *Press–Enterprise II*. This Court is not convinced. Compare the public access to criminal trials,

---

[5] The Court is aware that the experience factor looks to historical practices throughout the United States, rather than to those of the challenged jurisdiction. *El Vocero de Puerto Rico v. Puerto Rico*, 508 U.S. 147, 150, (1993). But, "courts have routinely considered the traditions of the state in which the dispute arises." *See Oklahoma Observer*, 73 F.Supp.3d at 1326 n.10 (collecting cases).

a proceeding which certainly passes the test, to executions. While the "town meeting approach to [criminal] trials was supplanted by a twelve-person jury functioning as the public's representatives" in the process, "the community did not surrender its right to observe the conduct of trials." *Oklahoma Observer*, 73 F.Supp.3d at 1327 (citing *Richmond Newspapers*, 448 U.S. at 572). But while many states allowed for some representatives of the public to attend executions, no comparable right of *general access* exists. *See, e.g., Arkansas Times, Inc.*, 2008 WL 110853, at *4 ("[T]he presence of six to twelve citizen witnesses does not transform a private execution into a public proceeding comparable to a criminal trial."). Members of the public cannot attend an execution in the same way that they could walk into a courthouse and observe a trial. Indeed, "the number and character of those who may witness the execution, and the exclusion altogether of reporters or representatives of newspapers . . . are regulations which the legislature, in its wisdom, and for the public good, could legally prescribe in respect to executions[.]" *Holden v. State of Minn.*, 137 U.S. 483, 491 (1890). While *Holden* concerned an *ex post facto* challenge to a state statute, the recognition that a state could regulate attendance at an execution is a good clue that executions do not have the same "unbroken, uncontradicted history" of public access as criminal trials. *Richmond Newspapers*, 448 U.S. at 573. In short, Plaintiffs have not established that public access to executions were part of the same, unbroken and uncontradicted historical tradition in the United States as other proceedings that pass muster under *Press–Enterprise II*.

Second, as to the logic consideration, courts ask "whether public access plays a significant positive role in the functioning of the particular process in question." *Press–Enterprise II*, 478 U.S. at 9. Here, Plaintiffs argue that "enjoining enforcement" of challenged provisions "will help the public evaluate whether Indiana's lethal injection procedure is competently administered and consistent with the Eighth Amendment." (Docket No. 20 at ECF

p. 13). Perhaps so. But while this argument is appealing, it cannot, standing alone, "serve as a basis for reading a right of public access into the First Amendment." *Arkansas Times, Inc.*, 2008 WL 110852, at *5. After all, the *Press–Enterprise II* framework requires the proceeding to reflect both considerations—experience *and* logic—before a "qualified First Amendment right of public access attaches." 478 U.S. at 9. Courts must guard against confusing policy goals with constitutional requirements. *See Houchins*, 438 U.S. at 13 ("We must not confuse what is good, desirable, or expedient with what is constitutionally commanded by the First Amendment.").

Finally, because this Court finds that Plaintiffs are unable to pass the experience and logic test, it need not determine whether the government interest in closing executions is "essential to preserve higher values and is narrowly tailored to preserve that interest." *Press–Enterprise I*, 464 U.S. at 510.

In sum, Plaintiffs are unlikely to succeed on the merits of their qualified right of access claim. The Court does not believe that an execution is a criminal proceeding to which the *Press–Enterprise II* framework applies. And even if it did apply, there is not a historical tradition of public access to executions sufficient to pass the experience and logic test. Thus, Plaintiffs' request for a preliminary injunction as to their first claim is **DENIED**.

### B. Free Press Clause

Plaintiffs second claim is that Indiana Code § 35-38-6-6 and ISP 06-26 treat members of the media less favorably than some members of the public, and hence they violate the First Amendment. The First Amendment, made applicable to the states through the Fourteenth Amendment, states that "Congress shall make no law . . . abridging the freedom . . . of the press[.]" U.S. Const. amend. I. The press is protected and assigned "to play an important role in the discussion of public affairs." *Mills v. Alabama*, 384 U.S. 214, 219 (1966) (citation omitted).

12

The bulk of Plaintiffs' argument attempts to superimpose free exercise of religion caselaw—and the standard for neutral laws of general applicability—onto their rights as members of the press. (*See* Docket No. 20 at ECF pp. 17–18). But their attempt misses the mark, and the only case pertaining to the treatment of the press is unpersuasive. To be sure, the press cannot be "singled out" for differential treatment in a way that burdens their First Amendment rights "unless the burden is necessary to achieve an overriding governmental interest." *Minneapolis Star & Tribune Co. v. Minn. Com'r of Rev.*, 460 U.S. 575, 582 (1983). But that case involved the imposition of a special use tax on ink, a regulation that "singled out the press for special treatment." *Id.* In contrast, the Indiana statute treats members of the press the same as everyone else—they are excluded from attending an execution unless they meet one of the criteria established by the legislature. Ind. Code § 35-38-6-6(a).

The mere fact that *some* narrowly defined members of the public (who may also be journalists) can attend the execution does not mean that the press are singled out for differential treatment. *See Pell*, 417 U.S. at 832 n. 8 (noting that just because the state of California "permitted family, friends, attorneys, and clergy to visit inmates" does not mean that the press is given less access to "engage in face-to-face discourse" than the general public). Defendants characterize Plaintiffs' claim as one seeking "equal access." (Docket No. 34 at ECF p. 19). This Court agrees. But that sort of equal access framework "fails for several reasons." *John K MacIver Inst. For Pub. Policy, Inc. v. Evers*, 994 F.3d 602, 612 (7th Cir. 2021). One reason is that "reporters are not cloaked with automatic strict scrutiny protection" simply because they are members of the press. *Id.* (quotations omitted). But perhaps more fundamentally, Plaintiffs' contention fails because the First Amendment "'does not guarantee the press a constitutional right

of *special access* to information not available to the public generally.'" *Id.* (quoting *Branzburg*, 408 U.S. at 684) (emphases added).

At bottom, Indiana law treats members of the press the same as members of the public at large. They are not being singled out for disparate treatment, even though Indiana law permits physicians and spiritual advisors to attend executions. Ind. Code § 35-38-6-6(a). And while ISP 06-26 states that "[m]edia personnel shall not be permitted to witness the execution," the prison regulation then states that an exception exists if the media member is among one of the five people invited by the offender. (Docket No. 9-1 at ECF p. 4). Thus, the media can attend the *same way* that members of the public can: through one of the eight designated pathways identified by the General Assembly. Because Plaintiffs' free press clause claim is unlikely to succeed on the merits, their request for a preliminary injunction is hereby **DENIED**.

## IV.    Conclusion

For the reasons stated above Plaintiffs' Motion for Preliminary Injunction (Docket No. 19) is **DENIED** in its entirety.

**IT IS SO ORDERED.**

Dated:  May 16, 2025

Matthew P. Brookman, Judge
United States District Court
Southern District of Indiana

Served electronically on all ECF-registered counsel of record.

# *** PUBLIC DOCKET ***

APPEAL

## U.S. District Court
## Southern District of Indiana (Indianapolis)
## CIVIL DOCKET FOR CASE #: 1:25-cv-00872-MPB-MJD

| | |
|---|---|
| THE ASSOCIATED PRESS et al v. NEAL et al | Date Filed: 05/05/2025 |
| Assigned to: District Judge Matthew P. Brookman | Jury Demand: None |
| Referred to: Magistrate Judge Mark J. Dinsmore | Nature of Suit: 950 Constitutional - State Statute |
| Cause: 28:2201 Constitutionality of State Statute(s) | Jurisdiction: Federal Question |

**Plaintiff**

**THE ASSOCIATED PRESS**                represented by    **Elizabeth Soja**
Reporters Committee for Freedom of the Press
11156 15th Street NW
Suite 1020
Washington, DC 20005
202-800-3557
Fax: 202-795-9310
Email: esoja@rcfp.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kristopher L Cundiff**
The Reporters Committee for Freedom of the
Press
PO Box 150
Fishers, IN 46038
463-271-4676
Fax: 202-795-9310
Email: kcundiff@rcfp.org
*ATTORNEY TO BE NOTICED*

**Lin Weeks**
Reporters Committee for Freedom of the Press
1156 15th Street, NW
Suite 1020
Washington, DC 20005
202-795-9300
Fax: 202-795-9310
Email: lweeks@rcfp.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**STATES NEWSROOM d/b/a INDIANA**        represented by    **Elizabeth Soja**
**CAPITAL CHRONICLE**                                      (See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kristopher L Cundiff**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Lin Weeks**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**GANNETT CO., INC.**                    represented by **Elizabeth Soja**
                                         (See above for address)
                                         *PRO HAC VICE*
                                         *ATTORNEY TO BE NOTICED*

                                         **Kristopher L Cundiff**
                                         (See above for address)
                                         *ATTORNEY TO BE NOTICED*

                                         **Lin Weeks**
                                         (See above for address)
                                         *PRO HAC VICE*
                                         *ATTORNEY TO BE NOTICED*

**Plaintiff**

**CIRCLE CITY BROADCASTING I, LLC**      represented by **Elizabeth Soja**
                                         (See above for address)
                                         *PRO HAC VICE*
                                         *ATTORNEY TO BE NOTICED*

                                         **Kristopher L Cundiff**
                                         (See above for address)
                                         *ATTORNEY TO BE NOTICED*

                                         **Lin Weeks**
                                         (See above for address)
                                         *PRO HAC VICE*
                                         *ATTORNEY TO BE NOTICED*

**Plaintiff**

**TEGNA INC.**                           represented by **Elizabeth Soja**
                                         (See above for address)
                                         *PRO HAC VICE*
                                         *ATTORNEY TO BE NOTICED*

                                         **Kristopher L Cundiff**
                                         (See above for address)
                                         *ATTORNEY TO BE NOTICED*

                                         **Lin Weeks**
                                         (See above for address)
                                         *PRO HAC VICE*
                                         *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**RON NEAL**
*in his official capacity as the Superintendent of Indiana State Prison*

represented by  **Adrienne Nicole Pope**
INDIANA ATTORNEY GENERAL
Indiana Government Center South, 5th Floor
302 West Washington St.
Indianapolis, IN 46204-2770
317-233-0878
Fax: 317-232-7979
Email: adrienne.pope@atg.in.gov
*ATTORNEY TO BE NOTICED*

**Brandyn Lee Arnold**
INDIANA ATTORNEY GENERAL
Indiana Government Center South, 5th Floor
302 West Washington St.
Indianapolis, IN 46204-2770
317-232-6201
Fax: 317-232-7979
Email: brandyn.arnold@atg.in.gov
*ATTORNEY TO BE NOTICED*

**Jefferson S. Garn**
INDIANA ATTORNEY GENERAL
Indiana Government Center South, 5th Floor
302 West Washington St.
Indianapolis, IN 46204-2770
(317) 232-6292
Fax: (317) 232-7979
Email: Jefferson.Garn@atg.in.gov
*ATTORNEY TO BE NOTICED*

**Thomas Pratt**
Office of Indiana Attorney General
302 West Washington St.
IGCS - 5th Floor
Indianapolis, IN 46204
317-232-0493
Email: Thomas.Pratt@atg.in.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**LLOYD ARNOLD**
*in his official capacity as the Commissioner of the Indiana Department of Correction*

represented by  **Adrienne Nicole Pope**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brandyn Lee Arnold**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jefferson S. Garn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Pratt**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/05/2025 | 1 | ***STRICKEN PURSUANT TO ORDER 7 *** COMPLAINT against All Defendants, filed by All Plaintiffs. (Filing fee $405, receipt number AINSDC-8665476) (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Civil Cover Sheet, # 5 Proposed Summons)(Cundiff, Kristopher) Modified on 5/7/2025 (JSR). (Entered: 05/05/2025) |
| 05/05/2025 | 2 | NOTICE of Appearance by Kristopher L Cundiff on behalf of Plaintiffs CIRCLE CITY BROADCASTING I, LLC, GANNETT CO., INC., STATES NEWSROOM d/b/a INDIANA CAPITAL CHRONICLE, TEGNA INC., THE ASSOCIATED PRESS. (Cundiff, Kristopher) (Entered: 05/05/2025) |
| 05/05/2025 | 3 | Rule 7.1 Disclosure Statement by CIRCLE CITY BROADCASTING I, LLC, GANNETT CO., INC., STATES NEWSROOM d/b/a INDIANA CAPITAL CHRONICLE, TEGNA INC., THE ASSOCIATED PRESS. (Cundiff, Kristopher) (Entered: 05/05/2025) |
| 05/06/2025 | 4 | MAGISTRATE JUDGE's NOTICE of Availability to Exercise Jurisdiction issued. (DJH) (Entered: 05/06/2025) |
| 05/06/2025 | 5 | Notice to File Rule 7.1 Disclosure Statement. (KLS) (DJH) (Entered: 05/06/2025) |
| 05/06/2025 | 6 | MOTION for Attorney(s) Lin Weeks to Appear pro hac vice (Filing fee $100, receipt number AINSDC-8666631), filed by Plaintiffs CIRCLE CITY BROADCASTING I, LLC, GANNETT CO., INC., STATES NEWSROOM d/b/a INDIANA CAPITAL CHRONICLE, TEGNA INC., THE ASSOCIATED PRESS. (Attachments: # 1 Text of Proposed Order Proposed Order)(Weeks, Lin) (Entered: 05/06/2025) |
| 05/07/2025 | 7 | ORDER - Plaintiffs' Complaint and Civil Cover Sheet do not comply with L.R. 5.1-2. The Court DIRECTS the Clerk to STRIKE the Complaint and attachments, [Filing No. 1 ; Filing No. 1-1 through Filing No. 1-5], and ORDERS Plaintiffs to RE-FILE their Complaint (including exhibits and Proposed Summons) and Civil Cover Sheet in compliance with L.R. 5.1-2 by May 12, 2025. (See Order.) Signed by District Judge Jane Magnus-Stinson on 5/7/2025. (JSR) (Entered: 05/07/2025) |
| 05/07/2025 | 8 | ORDER granting 6 Motion to Appear pro hac vice. Attorney Lin Weeks for CIRCLE CITY BROADCASTING I, LLC,Lin Weeks for GANNETT CO., INC.,Lin Weeks for RON NEAL,Lin Weeks for STATES NEWSROOM d/b/a INDIANA CAPITAL CHRONICLE,Lin Weeks for TEGNA INC.,Lin Weeks for THE ASSOCIATED PRESS added. Signed by Magistrate Judge Mark J. Dinsmore on 5/7/2025. (JRB) (Entered: 05/07/2025) |
| 05/07/2025 | 9 | COMPLAINT against All Defendants SEEKING STATEWIDE/NATIONWIDE RELIEF, filed by All Plaintiffs. (Attachments: # 1 Exhibit A - ISP 06-26, # 2 Exhibit B - Ind. Cap. Chron. article on Corcoran execution, # 3 Exhibit C - List of Ind. offenders sentenced to death, # 4 Civil Cover Sheet, # 5 Proposed Summons)(Cundiff, Kristopher) Modified on 5/7/2025 - Updated dkt text (JSR). (Entered: 05/07/2025) |
| 05/08/2025 | 10 | MOTION for Attorney(s) Elizabeth J. Soja to Appear pro hac vice (Filing fee $100, receipt number AINSDC-8671541), filed by Plaintiffs CIRCLE CITY BROADCASTING I, LLC, GANNETT CO., INC., STATES NEWSROOM d/b/a INDIANA CAPITAL CHRONICLE, TEGNA INC., THE ASSOCIATED PRESS. (Attachments: # 1 Text of Proposed Order)(Soja, Elizabeth) (Entered: 05/08/2025) |
| 05/08/2025 | 11 | NOTICE of Appearance by Jefferson S. Garn on behalf of Defendants LLOYD ARNOLD, RON NEAL. (Garn, Jefferson) (Entered: 05/08/2025) |
| 05/08/2025 | 12 | NOTICE of Appearance by Adrienne Nicole Pope on behalf of Defendants LLOYD ARNOLD, RON NEAL. (Pope, Adrienne) (Entered: 05/08/2025) |
| 05/08/2025 | 13 | Summons Issued to LLOYD ARNOLD and RON NEAL. (BAA) (Entered: 05/08/2025) |
| 05/08/2025 | 14 | MOTION to Transfer Case , filed by Defendants LLOYD ARNOLD, RON NEAL. (Garn, Jefferson) (Entered: 05/08/2025) |
| 05/09/2025 | 15 | NOTICE OF PRACTICES AND PROCEDURES before District Judge Jane Magnus-Stinson. (MRI) (Entered: 05/09/2025) |

| 05/09/2025 | 16 | ORDER granting 10 Motion to Appear pro hac vice. Attorney Elizabeth Soja for CIRCLE CITY BROADCASTING I, LLC,Elizabeth Soja for GANNETT CO., INC.,Elizabeth Soja for STATES NEWSROOM d/b/a INDIANA CAPITAL CHRONICLE,Elizabeth Soja for TEGNA INC.,Elizabeth Soja for THE ASSOCIATED PRESS added. Signed by Magistrate Judge Mark J. Dinsmore on 5/9/2025. (JRB) (Entered: 05/12/2025) |
|---|---|---|
| 05/12/2025 | 17 | Rule 7.1 Disclosure Statement by TEGNA INC. identifying Other Affiliate BlackRock, Inc. for TEGNA INC... (Cundiff, Kristopher) (Entered: 05/12/2025) |
| 05/12/2025 | 18 | NOTICE of Change of Attorney Information. Consistent with Local Rule 5-3, Kristopher L Cundiff hereby notifies the Clerk of the court of changed contact information. (Cundiff, Kristopher) (Entered: 05/12/2025) |
| 05/12/2025 | 19 | MOTION for Preliminary Injunction , filed by Plaintiffs CIRCLE CITY BROADCASTING I, LLC, GANNETT CO., INC., STATES NEWSROOM d/b/a INDIANA CAPITAL CHRONICLE, TEGNA INC., THE ASSOCIATED PRESS. (Attachments: # 1 Text of Proposed Order Setting Schedule) (Cundiff, Kristopher) (Entered: 05/12/2025) |
| 05/12/2025 | 20 | BRIEF/MEMORANDUM in Support re 19 MOTION for Preliminary Injunction , filed by Plaintiffs CIRCLE CITY BROADCASTING I, LLC, GANNETT CO., INC., STATES NEWSROOM d/b/a INDIANA CAPITAL CHRONICLE, TEGNA INC., THE ASSOCIATED PRESS. (Attachments: # 1 Exhibit Index, # 2 Exhibit A - 1910 Ky. Acts 112, # 3 Exhibit B - 1885 Ohio Laws 170, # 4 Decl. of Sophia Tareen, # 5 Decl. of Thomas J. Coyne, # 6 Decl. of Niki Kelly, # 7 Decl. of Casey Smith, # 8 Decl. of Kristine Phillips, # 9 Decl. of Joseph Dits, # 10 Decl. of Jennie Runevitch, # 11 Decl. of Rich Nye, # 12 Decl. of Tim Spears)(Cundiff, Kristopher) (Entered: 05/12/2025) |
| 05/12/2025 | 21 | MOTION for Emergency Hearing re 19 MOTION for Preliminary Injunction , filed by Plaintiffs CIRCLE CITY BROADCASTING I, LLC, GANNETT CO., INC., STATES NEWSROOM d/b/a INDIANA CAPITAL CHRONICLE, TEGNA INC., THE ASSOCIATED PRESS. (Cundiff, Kristopher) (Entered: 05/13/2025) |
| 05/13/2025 | 22 | RESPONSE in Opposition re 14 MOTION to Transfer Case , filed by Plaintiffs CIRCLE CITY BROADCASTING I, LLC, GANNETT CO., INC., STATES NEWSROOM d/b/a INDIANA CAPITAL CHRONICLE, TEGNA INC., THE ASSOCIATED PRESS. (Cundiff, Kristopher) (Entered: 05/13/2025) |
| 05/13/2025 | 23 | ORDER OF CASE REASSIGNMENT - The Court, sua sponte, now orders this case randomly reassigned due to the requirements of workload pursuant to S.D. Ind. L.R. 40-1(f). The Clerk is directed to randomly reassign the case to another district judge. No magistrate judge reassignment shall occur. Signed by District Judge Jane Magnus-Stinson on 5/13/2025. (JSR) (Entered: 05/13/2025) |
| 05/13/2025 | 24 | NOTICE of Reassignment of Case to District Judge Matthew P. Brookman. District Judge Jane Magnus-Stinson is no longer assigned to this case. Please include the new case number, **1:25-cv-872-MPB-MJD**, on all future filings in this matter. (CCG) (Entered: 05/13/2025) |
| 05/13/2025 | 25 | ORDER - Any reply in support of the motion to transfer, Dkt. 14 , shall be filed by 3:00 p.m. (Eastern) on Tuesday, May 13, 2025. Signed by Magistrate Judge Mark J. Dinsmore on 5/13/25. (CKM) (Entered: 05/13/2025) |
| 05/13/2025 | 26 | ORDER - Any response to the motion for preliminary injunction, Dkt. 19 , shall be filed by Thursday, May 15, 2025, at 1:00 p.m. (Eastern). Signed by Magistrate Judge Mark J. Dinsmore on 5/13/25. (CKM) (Entered: 05/13/2025) |
| 05/13/2025 | 27 | NOTICE of Appearance by Thomas Pratt on behalf of Defendants LLOYD ARNOLD, RON NEAL. (Pratt, Thomas) (Entered: 05/13/2025) |
| 05/13/2025 | 28 | ORDER granting 21 Motion for Emergency Hearing - A HEARING on Plaintiff's Motion for Preliminary Injunction is SET for FRIDAY, 5/16/2025, at 10:00 AM (Central Time) in room #301, United States Courthouse, 101 Northwest MLK Boulevard, Evansville, Indiana before District Judge Matthew P. Brookman. The court has allotted three hours for this hearing. (See Order.) Signed by District Judge Matthew P. Brookman on 5/13/2025. (JSR) (Entered: 05/13/2025) |

| 05/13/2025 | 29 | REPLY in Support of Motion re 14 MOTION to Transfer Case , filed by Defendants LLOYD ARNOLD, RON NEAL. (Garn, Jefferson) (Entered: 05/13/2025) |
| 05/13/2025 | 30 | NOTICE of Appearance by Brandyn Lee Arnold on behalf of Defendants LLOYD ARNOLD, RON NEAL. (Arnold, Brandyn) (Entered: 05/13/2025) |
| 05/14/2025 | 31 | MOTION *for Witness to Appear Remotely*, filed by Defendants LLOYD ARNOLD, RON NEAL. (Attachments: # 1 Text of Proposed Order Proposed Order Granting Motion for Witness to Appear Remotely)(Garn, Jefferson) (Entered: 05/14/2025) |
| 05/14/2025 | 32 | ORDER denying 14 Motion to Transfer Case. Defendants have not shown that transferring this case to the Northern District of Indiana would be "clearly more convenient." (SEE ORDER.) Signed by District Judge Matthew P. Brookman on 5/14/2025. (TPS) (Entered: 05/14/2025) |
| 05/15/2025 | 33 | ORDER granting 31 Motion - Defendants requested that defendant Warden Ron Neal be permitted to appear remotely for the hearing on plaintiff's motion for preliminary injunction. That motion is GRANTED. Warden Ron Neal may appear via Zoom for the hearing. The information needed to appear remotely will be provided to counsel by email. Signed by District Judge Matthew P. Brookman on 05/15/2025. (AJG) (Entered: 05/15/2025) |
| 05/15/2025 | 34 | RESPONSE in Opposition re 19 MOTION for Preliminary Injunction , filed by Defendants LLOYD ARNOLD, RON NEAL. (Attachments: # 1 Exhibit A - Declaration of Warden Neal)(Garn, Jefferson) (Entered: 05/15/2025) |
| 05/16/2025 | 35 | MINUTE ORDER for proceedings held before District Judge Matthew P. Brookman: Hearing on Plaintiff's Motion for Preliminary Injunction held on 5/16/2025. Plaintiffs were represented by counsel Lin Weeks, Elizabeth Soja, and Kristopher Cundiff. Defendants were represented by Indiana Deputy Attorneys General Jefferson Garn, Thomas Pratt, and Brandyn Arnold. Witness Warden Ron Neal was sworn, examined, and cross-examined. The court heard arguments from the parties and took the matter under advisement. An order on Plaintiff's Motion for Preliminary Injunction will be issued separately. Signed by District Judge Matthew P. Brookman. (Court Reporter Amy Hooten.)(LES) (Entered: 05/16/2025) |
| 05/16/2025 | 36 | ORDER denying 19 Motion for Preliminary Injunction. Signed by District Judge Matthew P. Brookman on 5/16/2025. (LES) (Entered: 05/16/2025) |
| 05/16/2025 | 37 | TRANSCRIPT of Preliminary Injunction Hearing held on May 16, 2025 before District Judge Matthew P. Brookman. (67 pages.) Court Reporter/Transcriber: Amy Hooten (Email: Amy_Hooten@insd.uscourts.gov). Please review Local Rule 80-2 for more information on redaction procedures. Redaction Statement due 6/6/2025. Release of Transcript Restriction set for 8/14/2025. (Hooten, Amy) (Entered: 05/16/2025) |
| 05/16/2025 | 38 | NOTICE of FILING of OFFICIAL TRANSCRIPT of Preliminary Injunction Hearing held before District Judge Matthew P. Brookman on May 16, 2025 (Hooten, Amy) (Entered: 05/16/2025) |
| 05/22/2025 | 39 | RETURN of Service, filed by All Plaintiffs. LLOYD ARNOLD served on 5/12/2025. (Cundiff, Kristopher) (Entered: 05/22/2025) |
| 05/22/2025 | 40 | RETURN of Service, filed by All Plaintiffs. RON NEAL served on 5/12/2025. (Cundiff, Kristopher) (Entered: 05/22/2025) |
| 05/27/2025 | 41 | NOTICE of Parties' First Extension of Time re Filing a response to pleading defined by Fed. R. Civ. P. 7(a), filed by Defendants LLOYD ARNOLD, RON NEAL. (Garn, Jefferson) (Entered: 05/27/2025) |
| 06/13/2025 | 42 | NOTICE OF INTERLOCUTORY APPEAL as to 36 Order on Motion for Preliminary Injunction, filed by Plaintiffs CIRCLE CITY BROADCASTING I, LLC, GANNETT CO., INC., STATES NEWSROOM d/b/a INDIANA CAPITAL CHRONICLE, TEGNA INC., THE ASSOCIATED PRESS. (Filing fee $605, receipt number AINSDC-8726827) (Weeks, Lin) (Entered: 06/13/2025) |
| 06/13/2025 | 43 | DOCKETING STATEMENT by All Plaintiffs re 42 Notice of Interlocutory Appeal (Weeks, Lin) (Entered: 06/13/2025) |

| 06/16/2025 | 44 | PARTIES' SHORT RECORD re 42 Notice of Interlocutory Appeal **- Instructions for Attorneys/ Parties attached.** (KAA) (Entered: 06/16/2025) |

**Case #: 1:25-cv-00872-MPB-MJD**