**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

THE ASSOCIATED PRESS, et al.,  )
           )
   Plaintiffs,    )
           )
  v.        )  No. 1:25-cv-00872-MPB-MJD
           )
RON NEAL, in his official capacity as the )
Superintendent of Indiana State Prison, )
et al.,         )
           )
   Defendants.   )

**MEMORANDUM IN SUPPPORT
OF MOTION TO DISMISS**

The Court should dismiss this case under Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs failed to state a claim for which relief may be granted against either Ron Neal, the Warden of the Indiana State Prison, or Lloyd Arnold, the Commissioner of the Indiana Department of Correction. While the law was already established well enough to decide the case when Plaintiffs filed their case, the Seventh Circuit has now definitively established the legal framework for this case, and no facts will change the basic problem for the plaintiffs: the press has no right to attend an Indiana execution. Consequently, the case should be dismissed.

**INTRODUCTION**

The Associated Press and other media outlets filed their complaint in this case on May 7, 2025, against Ron Neal and Lloyd Arnold. Dkt. 9. Indiana Code § 35-38-6-6(a) allows only select individuals to attend and observe State executions. *Id.* at ¶ 3.

1

But Plaintiffs assert that the First Amendment requires the State of Indiana to permit media attendance at executions. *Id.* at ¶¶ 5-6.

Plaintiffs brought two counts to further their goal of attending executions in Indiana. Dkt. 9. First, Plaintiffs allege a deprivation of their qualified First Amendment right to attend and observe executions as surrogates for the public. Dkt. 9 at ¶¶ 51-67. Next, Plaintiffs allege a deprivation of their rights under the Press Clause of the First Amendment. *Id.* at ¶¶68-76. Plaintiffs seek a declaratory judgement that Indiana Code § 35-38-6-6(a) and ISP 06-26 (the prison directive implanting the statute) violate the First Amendment; they also seek an injunction to restrain Defendants from enforcing Indiana Code § 35-38-6-6(a) and ISP 06-26 against members of the press and require the State of Indiana to allow press at private executions. *Id.* at 18. As a matter of law, Plaintiffs' case should be dismissed in its entirety.

## PROCEDURAL HISTORY

Plaintiffs filed their complaint on May 7, 2025, (Dkt. at 9) after the Court struck their original complaint filed on May 5 because it did not comply with the local rules. Dkt. 7. The timing was apparently driven by an execution scheduled for May 20, 2025. Dkt. 9. On May 12, 2025, Plaintiffs filed a motion for preliminary injunction and supporting memorandum. Dkt. 19, 20. After the Court held a hearing on the motion, the Court denied the motion on May 16, 2025. Dkt. 36. Plaintiffs then appealed the order to the Seventh Circuit on June 13, 2025. Dkt. 42.

On June 5, 2026, the Seventh Circuit affirmed this Court's order. *Associated Press v. Neal*, 177 F.4th 862, 869 (7th Cir. 2026). The Seventh Circuit held that "exe-

cutions have not historically been open to the press and general public" and "Indiana's policy is therefore generally applicable even under the plaintiffs' modified free exercise definition." *Id*. at 868-869. In the District Court, Plaintiffs had filed an uncontested motion to stay while the case was pending in the Seventh Circuit. Dkt. 47. The Court lifted the stay on July 6, 2026. Dkt. 66.

## LEGAL STANDARD

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) if the complaint fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws inferences in favor of the plaintiff. *Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008). But the Court "is not bound by the nonmoving party's legal characterizations of the facts." *Nat'l Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir.1987). Courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002). In other words, "the complaint must include 'enough facts to state a claim to relief that is plausible on its face.'" *Feresu v. Indiana U. Bloomington*, 2015 WL 5177740, at *1 (S.D. Ind. Sept. 3, 2015) (citing *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir.2009)) (citation and quotation marks omitted).

### ARGUMENT

This case should be dismissed because Plaintiffs' case relies on an interpretation of the constitution that the Seventh Circuit has definitively rejected. In other words, there is no right to what Plaintiffs rely on for any relief in this case.

First, the law of the case doctrine applies here and establishes that there is no constitutional right to attend Indiana execution. But even if the law of the case doctrine didn't apply here (although it's unclear what facts would need to be developed for the doctrine not to apply), the law was sufficiently clear before the Seventh Circuit said anything about Plaintiffs' case that their case would fail as a matter of law.

Any First Amendment claim against Defendants fails because Indiana executions have not historically been open to the press and the general public. Furthermore, Indiana's execution witness policy does not treat the press less favorably than the general public. Accordingly, Defendants' Motion to Dismiss should be granted.

I.    **The Law of the Case Doctrine applies here and establishes that there is no constitutional right to attend Indiana executions.**

The law of the case doctrine "is a rule of practice, based on the sound policy… that when an issue is once litigated and decided, that should be the end of the matter." *Creek v. Vill. Of Westhaven*, 144 F.3d 441, 445 (7th Cir. 1998) (quoting *Gertz v. Robert Welch, Inc.*, 680 F.2d 527, 532 (7th Cir. 1982)). This doctrine advises against revisiting earlier rulings "absent a compelling reason, such as manifest error or a change in the law." *Toliver v. Pollard*, 688 F.3d 853, 861 (7th Cir. 2012) (quoting *Minch v. City of Chicago*, 486 F.3d 294, 301 (7th Cir. 2007)).

Typically, the legal and factual rulings made by a court as part of any preliminary-injunction analysis are not binding on courts considering the matter later on the merits. *Tully v. Okeson*, 78 F.4th 377, 381 (7th Cir. 2023). Factors such as "a less-than-developed record, a short timeline, and a concomitant truncated legal analysis— usually counsel against invoking the law of the case doctrine in a way that would preclude a full merits determination." *Id. at* 381.

But this general rule does not apply to "a fully considered appellate ruling on an issue of law made on a preliminary injunction appeal." *Id.* (cleaned up and quoting 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4478.5 (3d ed. 2019)). What this means is that when the usual factors such as a rushed review or a faulty record are absent, an earlier legal conclusion underlying a ruling on a motion for a preliminary injunction may establish binding law of the case.

This case falls comfortably into the exception of the general rule, so the Seventh Circuit's decision (which lined up with this Court's decision) is the law of the case. There are no new facts to incorporate, and there is nothing that could be added to the record to change the conclusions already established in this case. Furthermore, the legal issues have remained the same because Plaintiffs will need to present the same legal argument that this Court and the Seventh Circuit have already rejected. Plaintiffs' arguments are no more persuasive now than they were then. So, although the Court does not need to rely on the law of the case doctrine to dismiss the case (after all, this Court came to the same conclusion before the Seventh Circuit heard

the case), the doctrine makes it abundantly clear that Plaintiffs' case depends on a misunderstanding of the First Amendment.

## II.    Plaintiffs fail to state a First Amendment access claim because the Seventh Circuit has held that Indiana executions have not historically been open to the press and the general public.

Plaintiffs' first claim is that the First Amendment guarantees the press and public a qualified right to access Indiana executions. Dkt. 9. Plaintiffs' First Amendment access claim fails as a matter of law. In affirming this Court's denial of Plaintiffs' motion for a preliminary injunction, the Seventh Circuit held that the First Amendment provides no qualified right of access to Indiana executions. *Associated Press,* F.4th at 866.

In order to succeed, Plaintiffs would need to show that both "experience" and "logic" point to a conclusion that executions are open to the public. But the Seventh Circuit has held that the "experience" and "logic" test does not apply to state executions because executions do not resemble a court proceeding. *Id.* at 865.

### A. The "Experience" and "Logic" Test does not apply to executions because they do not resemble a court proceeding.

The Seventh Circuit, in coming to its decision, relied on the "experience" and "logic" test the Supreme Court set out in *"Press-Enterprise II," Press-Enter. Co. v. Superior Ct. of California for Riverside Cnty.*, 478 U.S. 1 (1986).

This test has two considerations. *Associated Press*, 177 F.4th at 865 (citing *Press-Enterprise II*, 478 U.S. 8). First, a "tradition of accessibility implies the favorable judgment of experiences," so the courts should consider "whether the place and

process have historically been open to the press and general public." *Id.* (quoting *Press-Enterprise II* at 8, in turn quoting *Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596, 605 (1982)). Next, the Supreme Court has "considered whether public access plays a significant positive role in the functioning of the particular process in question." *Id.* These considerations—"experience" and "logic"—inform whether a proceeding would fall under the First Amendment and mandate access to the press or general public. In short, to fulfill the *Press-Enterprise II* Test, both "experience" and "logic" prongs must be fulfilled for a qualified First Amendment right of public access to attach. *Id.* at 9.

Plaintiffs relied on an interpretation of *Press-Enterprise II*—the media have a qualified right of access to certain government proceedings like an execution—that the Seventh Circuit rejected because an execution is fundamentally different than a court proceeding. *Associated Press,* 177 F.4th at 865. The Seventh Circuit noted that the *Press-Enterprise II* test has been used only to assess whether the public has a right of access to traditional aspects of criminal proceedings. *Id.* (citing, *e.g.*, *Press-Enterprise II*, 478 U.S. at 13) (holding that "the qualified First Amendment right of access to criminal proceedings applies to preliminary hearings"); *Press-Enter. Co. v. Super. Ct.*, 464 U.S. 501, 503, 505–10 (1984) (*Press-Enterprise I*) (holding that the "guarantees of open public proceedings in criminal trials" apply to the examination of potential jurors); *Globe Newspaper Co.*, 457 U.S. at 604–07 (holding that the qualified "right of access to criminal trials" applies to testimony by minor victims of specified sexual offenses); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580

7

(1980) (plurality opinion) ("We hold that the right to attend criminal trials is implicit in the guarantees of the First Amendment ….").

Notably, the Seventh Circuit has never applied the *Press-Enterprise II* test to anything other than "court proceedings" and related "documents." *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1069 (7th Cir. 2018)(concluding that "the First Amendment right of access extends to civil proceedings and associated records and documents"). Finally, the Seventh Circuit noted that an execution occurs outside the adjudicative process, after the factfinder has determined guilt and the trial court has imposed a sentence and terminated the case. *Associated Press*, 177 F.4th at 865..

In other words, the Supreme Court has used *Press-Enterprise II* to decide what kind of access the press should get to legal proceedings—there is no authority to apply this kind of test to the executions in Indiana. Accordingly, there is no right to access, and the plaintiffs' case fails.

**B. Plaintiffs do not satisfy the "experience" prong because executions are different than criminal trials and are not open to the press and general public.**

But even if the *Press-Enterprise II* Test applied here, Plaintiffs' case still fails as a matter of law because they cannot meet the test and thus lack a qualified First Amendment right to view Indiana executions. *Associated Press*, 177 F.4th at 865.

The Seventh Circuit first analyzed and disagreed with Plaintiffs historical arguments. Dkt. 9 at ¶ 51-67. Although executions were initially held in the "public squares or commons" at our nation's inception, by the 1830s many states "began to prohibit public executions." *Associated Press*, 177 F.4th at 866, (*quoting* John D.

8

Bessler, *Televised Executions and the Constitution: Recognizing a First Amendment Right of Access to State Executions*, 45 Fed. Commc'ns L.J. 355, 359-360 (1993) (quoting Louis P. Masur, *Rites of Execution* 59 (1989)).

Shortly thereafter, in 1852, Indiana mandated that executions take place "in some private enclosure as near to the jail as possible." *Associated Press*, 177 F.4th at 866 (quoting 1852 Ind. Acts, vol. II, 379 § 134).

The last public execution in the United States took place in 1937. *Associated Press*, 177 F.4th at 866 (citing Bessler, *Televised Executions and the Constitution*, at 365). What this history demonstrates is "a decided and longstanding trend away from openness." *Associated Press*, 177 F.4th at 866 (citing *PG Pub. Co. v. Aichele*, 705 F.3d 91, 110 (3d Cir. 2013)) (applying the *Press-Enterprise II* Test).

While the Plaintiffs argue that it's somehow persuasive for their case that other states invite the press to attend executions, the Seventh Circuit rejected that argument too. *Associated Press*, 177 F.4th at 866. Although there was some public access to executions, this did not make them "open to the press and general public." *Id.* (citing *Press-Enterprise II*, 478 U.S. at 8). To be "open to the press and general public" the Supreme Court has favored categorically open invitations. *Press-Enterprise II*, 478 U.S. at 10. Limiting a private execution to a small group of witnesses is not enough to establish that public executions enjoy "the favorable judgment of experience." *Associated Press*, 177 F.4th at 867 (citing *Press-Enterprise II*, 478 U.S. at 11).

To be sure, the Ninth Circuit took a different view of this, but the Seventh Circuit disagreed with that Circuit's approach, an approach articulated in *California*

9

*First Amendment Coalition v. Woodford*, 299 F.3d 868, 876 (9th Cir. 2002). In *California First*, the Ninth Circuit held that the "tradition of at least limited public access to executions" satisfied the experience prong. *Id*. The Ninth Circuit's logic was based on the Supreme Court precedent that recognized the right of public access to criminal trials. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 (1980). But the Seventh Circuit pointed to the fundamental difference between executions and trials. *Associated Press*, 177 F.4th at 867. One important factor is that any downturn in attendance at trials can be attributed to a lack of interest, instead of the state's statutory prohibition of open attendance to executions. *Id*.

Finally, the Seventh Circuit does not reach a firm conclusion to the "logic" prong because the Supreme Court has explained that "a qualified First Amendment right of public access attaches" when a particular proceeding passes both "tests of experience and logic." *Id.,* citing *Press-Enterprise II*, 478 U.S. at 9.

Plaintiff simply cannot satisfy the "experience" prong because executions have not historically been open to the press and general public. *Associated Press*, 177 F.4th at 868. Therefore, the case should be dismissed.

III.    **Plaintiffs' Press Clause Claim fails as a matter of law because Indiana's execution witness statute and policy do not treat the press less favorably than the public.**

In affirming this Court's order, the Seventh Circuit looked to the well-established principle that "generally applicable laws do not offend the First Amendment simply because their enforcement against the press has incidental effects on its ability to gather and report the news." *Associated Press*, 177 F.4th at 868 (quoting *Cohen*

*v. Cowles Media Co.*, 501 U.S. 663, 669 (1991)). Equally plain is that "newsmen have no constitutional right of access to prisons or their inmates beyond that afforded the general public." *Associated Press*, 177 F.4th at 868 (quoting *Pell v. Procunier*, 417 U.S. 817, 834 (1974)).

Indiana allows only the following people to attend executions: (1) the state prison warden; (2) those assisting in the execution; (3) the prison physician; (4) one other physician; (5) the inmate's spiritual advisor; (6) the prison chaplain; (7) up to five people invited by the inmate to attend; and (8) up to eight of the victim's immediate adult family members. Ind. Code § 35-38-6-6(a)). Prison Guidance 06-26 allows members of the media to attend if the prisoner invites them as any of the five allotted guests.[1]

Indiana, by limiting any press access to that of the general public, meets the First Amendment standards for access set out in *Pell v. Procunier*, 417 U.S. 817 (1974). So, although Indiana doesn't grant the press special access, the "First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally." *Id.* at 818. In *Pell*, the California Department of Corrections' manual barred the press and any other media interviews with individual inmates. *Id.* at 819. But California permitted visits from family, friends, attorneys, and clergy. *Pell*, 417 U.S. at 819, 830 n.8. The Supreme Court approved of this restriction because it gave the press the same access as the general

---

[1] What this means is that, despite Plaintiffs' assertions, there is no prohibition against the press attending an execution. There's just no special treatment.

public. *Id.* A personal or professional relationship to the inmate is permitted before they are permitted to meet with an inmate. *Id.*

Likewise, here in Indiana, individuals with a relationship with the inmate or victim to attend executions may attend an execution if invited. Ind. Code 35-38-6-6(a). Thus, the press is treated just like the general public. *Associated Press*, 177 F.4th at 869. And that equal treatment satisfies what a state must do under the Press Clause of the First Amendment.

But Plaintiffs insist that isn't enough. Specifically, they rely on a doctrine that "a law … lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way," and they argue that this doctrine should apply to the Press Clause in addition to the Free Exercise Clause. Dkt. 9 at 68-76 (citing *Fulton v. City of Philadelphia*, 593 U.S. 522, 534 (2021), Dkt. 9 at ¶¶ 68-76. But the Supreme Court has given no reason to believe the doctrine should be understood so expansively. First, the Supreme Court explicitly held that the doctrine applies "for purposes of the Free Exercise Clause." *Tandon v. Newsom*, 593 U.S. 61, 62 (2021). So the Seventh Circuit found no basis to break new ground and apply this framework to the Press Clause because the framework is built on the peculiar nature of religious conduct and the reasoning in *Tandon* itself that relies on a distinction between the religious and the secular. *Associated Press*, 177 F.4th at 869.

In short, Indiana allows a limited number of people to attend the execution, those with a connection to the crime, inmate, or procedure itself. This generally ap-

12

plicable statute meets constitutional muster. *Associated Press*, 177 F.4th at 869 (7th Cir. 2026). The plaintiffs' argument rests on a faulty understanding of the constitution. No facts will change that. Their case should be dismissed.

## CONCLUSION

For these reasons, the Court should grant the motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

Respectfully Submitted,

THEODORE E. ROKITA
Attorney General of Indiana
Attorney No: 18857-49

Dated:  July 27, 2026            By:  */s/ Jefferson S. Garn*
                                      Jefferson S. Garn
                                      Deputy Attorney General
                                      Attorney No. 29921-49
                                      OFFICE OF ATTORNEY GENERAL TODD ROKITA
                                      Indiana Government Center South, 5th Fl.
                                      302 West Washington Street
                                      Indianapolis, IN 46204-2770
                                      Phone: (317) 232-5933
                                      Fax: (317) 232-7979
                                      Jefferson.Garn@atg.in.gov

                                 By:  */s/ Adrienne N. Pope*
                                      Adrienne N. Pope
                                      Deputy Attorney General
                                      Attorney No. 31911-49
                                      OFFICE OF ATTORNEY GENERAL TODD ROKITA
                                      Indiana Government Center South, 5th Fl.
                                      302 West Washington Street
                                      Indianapolis, IN 46204-2770
                                      Phone: (317) 233-0878
                                      Fax: (317) 232-7979
                                      Email: Adrienne.Pope@atg.in.gov

13