**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| THE ASSOCIATED PRESS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-00872-MPB-MJD |
| | ) | |
| ERIK KRUPER, in his official capacity as Superintendent of Indiana State Prison, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY IN SUPPPORT**
**OF MOTION TO DISMISS**

The Court should dismiss this case under Federal Rule of Civil Procedure 12(b)(6) because the press holds no right to special treatment under the Constitution and that is precisely what Plaintiffs need for there to be any plausible argument that the media are entitled to attend executions. And although the media plaintiffs demonstrate an ability to find fascinating historical items from their archives, the volume of information does not change anything about their case because this Court and the Seventh Circuit have already rejected the legal framework where it would matter. Even if the mass of information did matter, the history of public observation of executions shows, as a matter of law, that there is not a clear and ongoing tradition of public executions. Accordingly, the defendants request that the Court dismiss the case.

## I. The law of the case doctrine applies, and there is no reason to "reconsider" the Court's earlier, correct decision rejecting the legal framework that serves the basis for the plaintiffs' case.

Once an issue has been decided in a case, that should be the end of the matter. *Creek v. Vill. of Westhaven*, 144 F.3d 441, 445 (7th Cir. 1998) (quoting *Gertz v. Robert Welch, Inc.*, 680 F.2d 527, 532 (7th Cir. 1982)). And while this does not usually apply to preliminary decisions such as on a motion for a preliminary injunction, this is not the case with "a fully considered appellate ruling on an issue of law made on a preliminary injunction appeal." *Tully v. Okeson*, 78 F.4th 377, 381 (7th Cir. 2023) (cleaned up and quoting 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4478.5 (3d ed. 2019)). That is the situation here.

Plaintiffs put their chips on the rushed nature of the motion for a preliminary injunction as a reason why the law of the case doctrine should not apply. Dkt. 87 at 9. Litigating the motion was rushed, but the tight timeframe[1] was the result of the Plaintiffs' "perplexing" choice of timing, *Associated Press v. Neal*, 788 F. Supp. 3d 959, 963 (S.D. Ind. 2025). But more important, Plaintiffs' pleading problem is not one of furthering factual development or accepting certain allegations as true; it's a categorical error.

---

[1] The Court noted the "tight timeframe" of the motion for a preliminary injunction in the context of the "ambiguity as to Plaintiffs' requested relief." *Associated Press v. Neal*, 788 F. Supp. 3d 959, 963 (S.D. Ind. 2025). Plaintiffs have done nothing to clarify the exact relief they are seeking, over one year and four months after filing the complaint.

At the heart of this case is whether executions should be treated like trials and thus fall under the *Press-Enterprise II* framework. This Court and the Seventh Circuit have already rejected this categorical analysis; that is, executions do not go in the category of a trial-like proceeding. And, to be clear, this decision does not rest of the law of the case; rather, the law is sufficiently clear that the *Press-Enterprise II* framework does not apply to executions so the plaintiffs fail to state a claim for which relief may be granted.

The Court in its order on the motion for a preliminary injunction noted that the focus of the First Amendment is typically the right to publish information, but the Supreme Court has recognized circumstances where the press has the right to access certain proceedings, notably for criminal trials. *Associated Press v. Neal*, 788 F. Supp. 3d 959, 964 (S.D. Ind. 2025). The Seventh Circuit, in turn, has applied the considerations developed in *Press-Enterprise II* beyond criminal proceedings. *Id.* But the category of what is accessible under the First Amendment has never been extended to the imposition of judgment, and this Court cited a Virginia district court's order *dismissing a case* where those plaintiffs alleged a qualified right to access executions as "quite a reach." *Associated Press v. Neal*, 788 F. Supp. 3d 959, 965–66 (S.D. Ind. 2025)(citing *BH Media Group, Inc. v. Clarke,* 466 F.Supp.3d 653, 662 (E.D. Va. 2020), vacated and remanded, 851 F.App'x 386 (4th Cir. 2021) (rendering the case moot after Virginia abolished the death penalty)).

And the Seventh Circuit agreed with the categorical decision, stating that they "doubt this framework applies to executions…[because] [t]he Supreme Court has only

ever used it to assess whether the public has a right of access to traditional aspects of criminal proceedings." *Associated Press v. Neal*, 177 F.4th 862, 865 (7th Cir. 2026). The Seventh Circuit after *Press-Enterprise II* has applied the framework only to "court proceedings" and "related 'documents.'" Id. at 865 (quoting *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1069 (7th Cir. 2018). The bottom line is that "[a]n execution does not resemble a court proceeding," and "[e]xecutions are different than trials." *Associated Press*, 177 F.4th at 865, 867.

That decision—what category does an execution go in—is a legal one that does not require more litigation. And that is why the plaintiffs keep asking the Court to "reconsider" its earlier decision. Dkt. 87 at 11. But that issue was briefed and argued in the Seventh Circuit without haste, and the Seventh Circuit rejected the plaintiffs' legal theory.

Given the determinative issues before this Court and the Seventh Circuit, the doctrine of the law of the case should apply. The legal issues remain the same and Plaintiffs will need to present the same legal argument that this Court and the Seventh Circuit have already rejected. Plaintiffs' reliance on a rejected theory of the First Amendment means the case should be dismissed. But even if the doctrine didn't apply, *Press-Enterprise II* fails to reach beyond the criminal trial context. The Constitution does not mandate attendance at the execution of a sentence. The case should be dismissed.

## II. As a matter of law, Plaintiffs fail to state a First Amendment access claim because the Seventh Circuit has held that Indiana executions have not historically been open to the press and the general public.

As the defendants have argued, as this Court has decided, and as the Seventh Circuit also decided, executions are not like criminal trials so the considerations from *Press-Enterprise II* do not apply. But even if they did, Plaintiffs' case should still be dismissed because they failed to state a claim because Indiana executions have not been open to the public.

Their theory rejected, Plaintiffs haul out a mass of articles about executions, trying to show that executions have been public, so the media may force their way into the execution area. Plaintiffs misunderstand what matters for a historical analysis for First Amendment purposes.

As noted earlier, the test, set out by the Supreme Court in "*Press-Enterprise II,"* has two considerations. *Associated Press*, 177 F.4th at 865 (citing *Press-Enter. Co. v. Superior Ct. of California for Riverside Cnty.*, 478 U.S. 1, 8 (1986). 1. A "tradition of accessibility implies the favorable judgment of experiences," so the courts should consider "whether the place and process have historically been open to the press and general public." *Id.* (quoting *Press-Enterprise II* at 8, in turn quoting *Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596, 605 (1982)). 2. "[W]hether public access plays a significant positive role in the functioning of the particular process in question." *Id.* So "experience" and "logic" inform whether a proceeding would fall under the First Amendment and mandate access to the press or general public, and both must be fulfilled for a qualified First Amendment right to attach.

The Seventh Circuit has already set out how to analyze the history as it relates to the "experience" prong of *Press-Enterprise II*, and it does not involve a survey of how many public executions there were in the Deep South or elsewhere in the nineteenth century. Rather, while executions were initially held in the "public squares or commons" at our nation's inception, by the 1830s many states "began to prohibit public executions." *Associated Press*, 177 F.4th at 866. But in 1852, Indiana mandated that executions take place "in some private enclosure as near to the jail as possible." *Associated Press*, 177 F.4th at 866 (quoting 1852 Ind. Acts, vol. II, 379 § 134). What the history shows is "a decided and longstanding trend away from openness." *Associated Press*, 177 F.4th at 866 (citing *PG Pub. Co. v. Aichele*, 705 F.3d 91, 110 (3d Cir. 2013)) (applying the *Press-Enterprise II* Test). Plaintiffs also argue that because some states made a sheriff pick witnesses, this does not make the executions "open to the press and general public." *Id.* (citing *Press-Enterprise II*, 478 U.S. at 8). And to be "open to the press and general public" the Supreme Court has favored categorically open invitations. *Press-Enterprise II*, 478 U.S. at 10.

Plaintiffs again face a categorical, legal problem. The problem is not a question of piling up competing documents to see which way the scale goes. Rather, it's about the type and trend of the tradition itself. The Seventh Circuit has already looked at the trend, and that trend shows, as a matter of law, that the executions have not been subject to open invitations, so Plaintiffs cannot meet the experience prong of the test, even if the test did apply.

Plaintiffs argue that they do not need to show an "unbroken, uncontradicted history" of open executions, arguing that that is not the *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 556 (1980), standard. Dkt. 87 at 21. But that is what the Seventh Circuit was looking for in the tradition—a tradition of openness—and that is precisely why the Supreme Court distinguished criminal trials and mandated those trials should remain open. This lack of an unbroken, uncontradicted history is just another reason why executions are different than trials, so there is no qualified right for the press to receive special access.

Further, the motive of the tradition is also important, and that's why the Supreme Court's recent case about Hawaii's gun control laws, *Wolford v. Lopez*, 146 S. Ct. 2032, 2053 (2026), bears attention. Plaintiffs detail a complex tradition but continue to awkwardly frame that tradition in the negative: "the purpose of those laws was not to limit transparency or forfeit the public's ability to understand what happened at executions." Dkt. 87 at 17. Left unsaid is the affirmative motive for the public executions, and the important point about the headlines is not what terms were used to describe the race of the executed, but rather the apparent importance of noting the race of the executed at all.

And given that the plaintiffs cannot meet the experience prong, they cannot satisfy the *Press-Enterprise II* test, so it is unnecessary to look at the logic prong. The case should be dismissed.

**III. Plaintiffs' reliance on pre-*Press-Enterprise II* caselaw fails.**

Plaintiffs try to get around this Court's and the Seventh Circuit's determination that the *Press-Enterprise II* framework doesn't apply by asking this Court to look at the cases *before* that decision, namely *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980). But the critical point in *Richmond Newspapers* was that it involved criminal trials, and Plaintiffs point to no authority that the Supreme Court's holding in that case has ever been expanded beyond the context of trials. Plaintiffs also gesture to the Eighth Amendment as a basis for mandating media presence at executions. There is no authority for such a jump. There is likewise no authority for thinking that *Press-Enterprise II* was somehow narrower than what *Richmond Newspapers* expounded. *Press-Enterprise II* could be seen as a more specific articulation of what courts should look for in their analysis. *Richmond Newspapers* involved criminal trials. The salient point was that the trial had an unbroken, uncontradicted history of openness. This older case provides nothing new, and the plaintiffs' attempt to create some sort of new right from that case should be rejected.

**IV. Indiana's generally applicable law does not burden the press.**

"Section 35-38-6-6(a) and Prison Guidance 06-26 do not discriminate against members of the press." *Associated Press*, 177 F.4th at 868. Despite this unequivocal pronouncement about the nature of Indiana law, Plaintiffs maintain that this is still somehow undecided. Plaintiffs rely on the fact that the media are mentioned in the policy and continue to argue that the media are "banned" from the execution chamber.

Dkt. 87 at 31. This is false. Prison Guidance 06-26 allows members of the media to attend if the prisoner invites them as any of the five allotted guests. It should not be surprising nor is it probative that the guidance would mention the press, given that it is the only group clamoring to attend executions.

Plaintiffs, to present a seemingly plausible allegation, require the Court to hold that the media are entitled to special access. But "newsmen have no constitutional right of access to prisons or their inmates beyond that afforded the general public." *Associated Press*, 177 F.4th at 868 (quoting *Pell v. Procunier*, 417 U.S. 817, 834 (1974)).

Further, Indiana meets the basic First Amendment standards for access set out in *Pell v. Procunier*, 417 U.S. 817 (1974). The "First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally." *Id.* at 818. Plaintiffs try to downplay this by again trying to assume that the State is suppressing the press without alleging any facts aside from not getting special treatment. Dkt. 87 at 34.

Plaintiffs also look to two other cases but it is difficult to see what they have to do with this case. *Turner Broad. Sys., Inc. v. F.C.C.* involved "must-carry provisions" targeted directly at cable companies. 512 U.S. 622 (1994). A regulation directed to a cable company is, by definition, not generally applicable, so, aside from mandating a higher burden on the defendants that the plaintiffs hope to impose on the Indiana defendants, the case has no bearing on this case. Next, *American Civil Liberties Union of Illinois v. Alvarez* involved whether Illinois prosecutors were barred by the

First Amendment from enforcing an eavesdropping statute against people who openly record police officers performing their duties. 679 F.3d 583, 586 (7th Cir. 2012). That case likewise has nothing to say about the case before the Court. The critical point there was that the statute's limit on recordings and expressive activity in the public, not about access. The problem with the Illinois law was that it "restricts a medium of expression—the use of a common instrument of communication—and thus an integral step in the speech process." *Id.* at 583. That is, "the expressive element of an expressive activity" triggered the application of a general law, and that is why First Amendment interests were in play in *Alvarez*. *Id.* at 602. Indiana's law is a generally applicable law that does not limit the media's expression.

Plaintiffs also raise again the argument that the definition of general applicability in the Free Exercise clause should be expanded to the Press Clause, but they raise it to preserve the issue on appeal. Dkt. 85 at 35. The Seventh Circuit, including the dissent, rejected the novel approach. It appears that the Plaintiffs are not pressing this issue, recognizing that it has already been foreclosed. So the Court should summarily reject this argument.

Indiana's law does not burden the press; the plaintiffs' claim should be dismissed.

* * *

For these reasons, the Court should grant the motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

Respectfully Submitted,

THEODORE E. ROKITA
Attorney General of Indiana
Attorney No: 18857-49

Dated: September 28, 2026

By: */s/ Jefferson S. Garn*
Jefferson S. Garn
Deputy Attorney General
Attorney No. 29921-49
OFFICE OF ATTORNEY GENERAL TODD ROKITA
Indiana Government Center South, 5th Fl.
302 West Washington Street
Indianapolis, IN 46204-2770
Phone: (317) 232-5933
Fax: (317) 232-7979
Jefferson.Garn@atg.in.gov

By: */s/ Adrienne N. Pope*
Adrienne N. Pope
Deputy Attorney General
Attorney No. 31911-49
OFFICE OF ATTORNEY GENERAL TODD ROKITA
Indiana Government Center South, 5th Fl.
302 West Washington Street
Indianapolis, IN 46204-2770
Phone: (317) 233-0878
Fax: (317) 232-7979
Email: Adrienne.Pope@atg.in.gov